IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LOUIS FAYANT,<br><br>Plaintiff,<br><br>vs.<br><br>ALK-ABELLO, INC. and JOHN DOES I-XXX,<br><br>Defendants. | CV 24-86-H-DWM<br><br><br>OPINION<br>and ORDER |

Plaintiff Louis Fayant alleges he was subject to discrimination while working for his former employer, Defendant ALK-Abello, Inc. ("ALK-Abello"). On June 2, 2024, Fayant, a 62-year-old Turtle Mountain Band of Chippewa Indians tribal member, brought suit in state court alleging ALK-Abello engaged in discriminatory practices that violated his rights under the Montana Human Rights Act, led to his wrongful discharge pursuant to the Montana Wrongful Discharge from Employment Act, and inflicted emotional distress. (Doc. 12; *see* Doc. 19.) On December 12, 2024, the case was removed to this Court. (Doc. 1.)

Fayant's claims arise out of ALK-Abello's alleged discrimination against him based on his age, gender, race, and perceived sexual orientation, which took the form of disparaging comments, disparate treatment, and termination. The

1

disparaging comments included his direct supervisor Doug Waddell stating on a team conference call that it "looks like [Fayant] is in a men's locker room trolling,"[1] (Doc. 19 at ¶ 15), and a coworker "challeng[ing]" Fayant's "Native American heritage" at a team dinner by stating "everyone probably has some Native American in them[,]" (*id.* ¶ 29). The disparate treatment took the form of Waddell's denial of Fayant's access to resources, (*id.* ¶¶ 26–27), and his utilization of compensation days, (*id.* ¶ 31), requiring Fayant go on short-term disability, (*id.*), failure to promote Fayant, (*id.* ¶ 32), failure to pay Fayant a salary equivalent to that of "non-Native" employees, (*id.* ¶¶ 18, 33), and constraint of Fayant's role, (*id.* ¶¶ 24, 32). Lastly, Fayant was terminated because of his "immutable characteristics" including age, gender, race, and perceived sexual orientation. (*Id.* ¶¶ 12, 14.) These allegations are assumed to be true and construed in Fayant's favor. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021). They are more thoroughly discussed in the analysis below.

ALK-Abello seeks to dismiss Fayant's claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 23; *see also* Docs. 27, 28, 30.) That motion is granted in part and denied in part.

---

[1] "Trolling is urban slang for seeking out a gay sexual partner." (Doc. 19 at ¶ 15.)

2

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). In diversity cases such as this, a federal court applies federal procedural law and the substantive law of the state. *Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

## ANALYSIS

Fayant alleges three claims: wrongful discharge under the Montana Wrongful Discharge from Employment Act (Count I), violations of the Montana Human Rights Act (Count II), and infliction of emotional distress (Count III). (Doc. 19.) ALK-Abello argues that most of Fayant's Human Rights Act discrimination allegations are time-barred, and without these allegations, Fayant's discrimination claim fails to meet the required pleading standards. Next, ALK-

3

Abello asserts that because "Fayant's Amended Complaint solely ties the circumstances of his termination to ALK's purported discrimination[,]" Fayant's wrongful discharge claim is precluded by the Montana Human Rights Act. (Doc. 24 at 8, 21–23.) Lastly, ALK-Abello argues that because infliction of emotional distress claim was not asserted independently, it also must fail. Ultimately, ALK-Abello is correct as to Fayant's wrongful discharge and infliction of emotion distress claims, however, Fayant's claims under the Montana Human Rights Act may proceed as explained below.

## I. Montana Human Rights Act

Fayant alleges that ALK-Abello's discriminatory practices violated the Montana Human Rights Act. ALK-Abello argues that the "vast majority" of Fayant's discrimination allegations are time-barred, *see* Mont. Code Ann. § 49-2-501(4)(a), and without these allegations, Fayant does not allege sufficient facts to support his claims under the Act. While ALK-Abello is correct that many of the alleged unlawful discriminatory practices are time-barred, Fayant's claims of discrimination and hostile work environment may proceed as detailed below.[2]

---

[2] Fayant's Verified Complaint and Amended Verified Complaint with the Montana Human Rights Bureau and its Final Investigative Report are "incorporated by reference into" his Amended Complaint because these "document[s] form[] the basis of [his] claim." *Chambers Mont. Contractors Ass'n Health Care Tr.*, 797 F. Supp. 2d 1050, 1053 (D. Mont. 2009) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Accordingly, conversion to summary judgment is not required here. *Id.*

4

### a. Administrative Exhaustion

The Montana Human Rights Act provides that no court has jurisdiction to entertain a discrimination claim under the Act "other than by the procedures specified" in the Act. Mont. Code Ann. § 49-2-512(1). Any person seeking to pursue a claim of discrimination in court must first file a complaint with the Montana Human Rights Bureau stating "the particulars of the alleged discriminatory practice." Mont. Code Ann. § 49-2-501(3). Upon receipt of the complaint, the Montana Human Rights Bureau must "investigate the matters set out in the complaint promptly and determine whether there is reasonable cause to believe that the allegations are supported by a preponderance of the evidence." Mont. Code Ann. § 49-2-504(1). The claimant may not file a lawsuit in a district court based on the alleged discriminatory practice until the Act's administrative procedures have been exhausted. Mont. Code Ann. § 49-2-512(3); *Borges v. Missoula Cnty. Sheriff's Office*, 415 P.3d 976, 981 (Mont. 2018).

Here, the parties were ordered to brief administrative exhaustion, (Doc. 27), and did so, (Docs. 28, 30). Fayant filed a Verified Complaint and Verified Amended Complaint with the Montana Human Rights Bureau. (Docs. 31-1, 31-2.) Upon review of Fayant's allegations, the Bureau investigated whether ALK-Abello (i) discriminated against Fayant because of his race, age, and sexual orientation by subjecting him to a hostile work environment ("Hostile Work Environment

5

Claim"); (ii) discriminated against Fayant because of his race, age, and sexual orientation by treating him differently in terms and conditions of employment ("Discrimination Claim"); or (iii) retaliated against Fayant when it terminated his employment ("Retaliation Claim"). (Doc. 31-3 at 1.) The Bureau issued a Final Investigative Report that found "no reasonable cause to believe unlawful discrimination occurred." *(Id.* (emphasis omitted).) Fayant then elected to file a complaint in state district court, (Doc. 31-5), and ALK-Abello removed this matter on the basis of diversity jurisdiction, (Doc. 1). Accordingly, Fayant has exhausted his administrative remedies a required by the Montana Human Rights Act.

### b. Claims at Issue

A district court may only entertain those claims that have been investigated and adjudicated by the Montana Human Rights Bureau. Mont. Code Ann. § 49-2-512(1); *Borges*, 415 P.3d at 982. As identified above, the Montana Human Rights Bureau investigated and adjudicated three claims against ALK-Abello: the Hostile Work Environment Claim, the Discrimination Claim, and the Retaliation Claim. (*See* Doc. 31-3.) ALK-Abello argues that Fayant did not plead the Retaliation Claim in his Amended Complaint. In response, Fayant does not argue to the contrary. (*See generally* Doc. 25.) Ultimately, ALK-Abello is correct.

Pursuant to Rule 8(a)(2), "[a] pleading that states a claim for relief must contain[] a short and plain statement of the claim showing that the pleader is

6

entitled to relief." A properly pled complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted). Here, Fayant has not pled individual counts for his Hostile Work Environment Claim, Discrimination Claim, and Retaliation Claim, instead he pleads, as Count II, "Violations of Title 49, MCA." (Doc. 19 at ¶¶ 41–46.) Count II specifically asserts the following violations of the Act: termination and discrimination based on race, perceived sexual orientation, gender, and age, (*id.* ¶ 42), and discrimination on these same grounds by disparate pay, (*id.* ¶ 43). However, Fayant does not specify which provisions of the Act were allegedly violated. The Montana Human Rights Act prohibits both retaliation, Mont. Code Ann. § 49-2-301, and discrimination in employment, Mont. Code Ann. § 49-2-303, albeit in separate provisions. Consistently, retaliation and discrimination claims are typically brought separately. *See, e.g., Staton v. City & Cnty. of Butte-Silver Bow*, 2023 WL 7428297, at *1 (D. Mont. Nov. 9, 2023). Here, neither the word "retaliation" nor any of the distinctive language in the retaliation statute,[3] *see* Mont. Code Ann. § 49-2-301, is mentioned

---

[3] "It is an *unlawful discriminatory practice* . . . to *discharge, expel, blacklist*, or otherwise discriminate against an individual because the individual has *opposed* any practices *forbidden* under this chapter or because the individual has filed a complaint, testified, assisted, or participated in any manner in an investigation or proceeding." § 49-2-301 (emphasis added.)

7

in Count II, whereas "discrimination" based on "race, perceived sexual orientation, gender, and age" is pled, (Doc. 19 at ¶¶ 41, 42), tracking the language in the discrimination provision, Mont. Code Ann. § 49-2-303. Further, Fayant appears to allege that "retaliatory behavior" against him was part of the "continuing course of discriminatory conduct" that constituted a "hostile work environment." (Doc. 19 at ¶ 12.) Thus, under the requisite pleading standard, Fed. R. Civ. P. 8(a)(2), *Twombly*, 550 U.S. at 555, although the Amended Complaint alleges retaliatory acts, it does not provide sufficient notice to ALK-Abello that Fayant has pled a Retaliation Claim. And, as noted above, Fayant does not assert otherwise. (*See generally* Doc. 25.) Accordingly, Fayant has not properly pled a Retaliation Claim, leaving only Fayant's Discrimination Claim and his Hostile Work Environment Claim.

### c. Statute of Limitations

A complaint under the Montana Human Rights Act must be filed with the Montana Human Rights Bureau "within 180 days after the alleged unlawful discriminatory practice occurred or was discovered." Mont. Code Ann. § 49-2-501(4)(a). ALK-Abello argues that the "vast majority" of Fayant's discrimination allegations are time-barred as they do not fall within this 180-day look-back period. ALK-Abello asserts that it made this argument in its first motion to dismiss, (Doc. 13), after which Fayant amended his Complaint, "remov[ing] . . .

8

specific dates that accompany the factual allegations plead in support of his discrimination claims." (Doc. 24 at 9.) And, according to ALK-Abello, that look-back period should begin on the date of the Human Rights Bureau Complaint; i.e., because Fayant filed his Human Rights Bureau Complaint on September 7, 2023, his look-back period would extend through March 11, 2023. In response, Fayant does not dispute that the look-back period is September 7 to March 11, 2023, but instead argues that his Human Rights Act claim is not time-barred for two reasons. First, Montana law provides an exception to the 180-day look-back period "where a continuing course of discriminatory conduct of an employer is found by a trial court." (Doc. 25 at 4 (citing *Benjamin v. Anderson*, 112 P.3d 1039, 1051 (Mont. 2005)).) Second, Fayant's termination fell within the look-back period, and his termination "was itself discriminatory." (*Id.* at 4–5.) Fayant is partially correct.

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court differentiated between Title VII claims based on "discrete acts of discrimination or retaliation" and "a hostile work environment claim." 536 U.S. 101, 105 (2002). The former claims are precluded by a statutory look-back period if the acts occurred outside this period. *Id.* at 110–15. However, when evaluating the latter claim, which by its "very nature involves repeated conduct[,]" "a court may, for the purposes of determining liability" consider "the entire time period of the hostile environment" "provided that an act contributing to the claim occurs within the

9

filing period." *Id.* at 115–17. The Montana Supreme Court has adopted this standard in its evaluation of Montana Human Rights Act claims. *Benjamin*, 112 P.3d at 1046–48.

Under this framework, Fayant's Discrimination Claim is timely based on his termination, which is an event that falls within the statutory look-back period. Fayant alleges that ALK-Abello discriminated against him because of his race, perceived sexual orientation, gender, and age, by terminating him and treating him disparately. (Doc. 19 at ¶¶ 42–43.) The specific incidences of disparate treatment are comprised of the following: Waddell's denial of Fayant's access to resources, which were available to his colleagues, (*id.* ¶¶ 26–27), Waddell's denial of Fayant's utilization of compensation days, which were permitted as to his coworker, (*id.* ¶ 31), Waddell's requirement that Fayant go on short-term disability, which was not required for a different coworker in a similar medical situation, (*id.*), failure to promote Fayant, (*id.* ¶ 32), failure to pay Fayant a salary equivalent to that of "non-Native" employees of his same rank and position, (*id.* ¶¶ 18, 33), and removal of Fayant from projects, elimination of his responsibilities, and constraint of his role, (*id.* ¶¶ 24, 32).

"'Discrete acts, such as termination, failure to promote, denial of transfer or refusal to hire are easy to identity,' and . . . a complainant may only file a charge to cover 'discrete acts' that occurred within the actionable time period." *Benjamin*,

112 P.3d at 1047 (quoting *Morgan*, 536 U.S. at 114). Here, on the pleadings, all alleged incidences of disparate treatment appear to be "discrete acts of discrimination." *Morgan*, 536 U.S. at 105.

The Complaint contains dates that are not included in the Amended Complaint. (*Compare* Doc. 12, *with* Doc. 19.) A court "can utilize allegations in prior versions of the complaint *to judge the plausibility* of the allegations in the amended complaint." *Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 WL 5976239, at *4 (S.D. Cal. Nov. 28, 2011) (emphasis in the original) (collecting cases). The Complaint alleges specific dates at to the following acts: denial of resources in February 2023 (Doc. 12 at ¶¶ 32–33); denial of compensation days between June and December 2022, (*id.* ¶¶ 41–43); required short-term disability in June 2022 (*id.* ¶¶ 41–42); failure to promote in 2022, (*id.* ¶ 44); discovery and confirmation by Waddell of the failure to pay Fayant a salary equivalent to that of non-Native employees in 2022, (*id.* ¶¶ 44–45), limiting Fayant's projects and responsibilities in 2022, (*id.* ¶ 44), and constraint of his role, (*id.*). Thus, each allegedly discriminatory act—except Fayant's termination—occurred outside the statutory look-back period. (Docs. 12, 19, 31-3.)

In response to the motion to dismiss, Fayant asserts, for the first time, that he has pled a "claim under the equal pay act[,]" referring to the Lilly Ledbetter Fair Pay Act of 2009, and that because "each new paycheck received by an employee

11

creates a separate cause of action for pay discrimination[,]" (Doc. 25 at 6), his final paycheck constitutes an actionable discriminatory act because it occurred within the statutory look-back period, (*id.* 25 at 5).

As to his first argument, Fayant did not plead any claims under the Lilly Ledbetter Fair Pay Act, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. (*See generally* Doc. 19.) He cannot do so now. As to his second argument, Fayant asserts that he received his final paycheck "on or about" the date he was terminated, (Doc. 26 at 6), which would have been within the look-back period. However, Fayant did not plead this allegation. Indeed, the word "paycheck" is not present in his Amended Complaint. Fayant does plead that ALK-Abello engaged in "discrimination by paying Plaintiff disparately lower than individuals who were not of his race, perceived sexual orientation, gender, and age." (Doc. 19 at ¶ 43.) But Fayant did not make any allegations regarding receipt of a final paycheck and, as explained above, the factual allegations supporting this claim are time-barred because the allegedly discriminatory practices were discovered in 2022.[4] Thus, although basing his Discrimination Claim on receipt of a final paycheck within the look-back period would ordinarily be viable, *Salvagni*

---

[4] Indeed, the discovery and confirmation by Waddell of the failure to pay Fayant a salary equivalent to that of non-Native employees occurred in 2022. (Doc. 12 at ¶¶ 44–45)

12

*v. Placer Dome U.S., Inc.*, 1999 WL 34764338, at *2 (D. Mont. 1999), Fayant did not make such an allegation here.

Accordingly, Fayant's Discrimination Claim is timely based only on his termination. Whether the events underlying Fayant's Hostile Work Environment Claim fall outside this statutory period depends on whether he has sufficiently plead that claim. Accordingly, both the merits of that claim and its timeliness are addressed together below.

### d. Merits

Fayant alleges that ALK-Abello discriminated against him because of his race, perceived sexual orientation, gender, and age by terminating his employment and treating him disparately. (Doc. 19 at ¶¶ 42, 43.) The Montana Human Rights Act provides, *inter alia*,

> It is an unlawful discriminatory practice for . . . an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of race, creed, religion, color, or national origin or because of age, physical or mental disability, marital status, or sex when the reasonable demands of the position do not require an age, physical or mental disability, marital status, or sex distinction.

Mont. Code Ann. § 49-2-303(1)(a). Because "the provisions of [the] Montana Human Rights Act[] are closely modeled after Title VII of the Federal Civil Rights Act[,]" Montana utilizes federal law to interpret the Act. *Martinez v. Yellowstone Cnty. Welfare Dep't*, 626 P.2d 242, 245–49 (Mont. 1981). At the motion to dismiss

13

stage a plaintiff need not present a *prima facie* case, but must simply allege facts plausibly suggesting an entitlement to relief, meaning "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12, 515 (2002); *see also Austin v. Univ of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019).

### i. Discrimination Claim

Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotation marks and alterations omitted). Thus, "[a] disparate-treatment plaintiff" must allege facts that plausibly indicate "the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* (internal quotation marks omitted); *see Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).

As explained above, the timely unlawful discriminatory practice at issue here is Fayant's termination. Fayant "is a Native American, an enrolled member of the Turtle Mountain Band of Chippewa Indians." (Doc. 19 at ¶ 9.) Beyond alleging that ALK-Abello "terminated [Fayant] because of his race," Fayant specifically alleges "discrimination, including . . . racial discrimination in terminating [his] employment[,]" *(id.* ¶ 11), and that "[r]acial animus was involved in [his] termination to make the entirety of the Market Access Team white[,]" *(id.* ¶

14

30). When terminated, Fayant was the only member of his team that was "not a white male[,]" and he was terminated to "intentionally . . . eliminate minorities" from his team. (*Id.*) "[O]ne of the ways [Fayant] learned that ALK[-Abello] intended to hire for [his] position . . . was an email [Fayant] received from a consultant" who "headhunted" him for the job "because of his unique skillset and qualifications." (*Id.* ¶ 21.) Despite asserting the "reason for [Fayant's] termination" was "restructuring its business[,]" ALK-Abello "did not restructure[,]" (*id.* ¶ 37), and only used this as a "pretext to discriminate against . . . and fire" Fayant, (*id.* ¶ 22). And a "white male" was hired for Fayant's position. (*Id.* at ¶ 21.) Based on these facts, Fayant has plausibly alleged that he was treated less favorably than other employees because of his race and that his termination was based on a racially discriminatory intent or motive. *See Ricci*, 557 U.S. at 577.

### ii. Hostile Work Environment Claim

The timeliness of this claim is bound up in its merits because in evaluation of a hostile environment claim, "a court may, for the purposes of determining liability" consider "the entire time period of the hostile environment[,]" even those events that occurring outside the statutory look-back period, "[p]rovided that an act contributing to the claim occurs within [that] period." *Morgan*, 536 U.S. at 115–17. Here, much of the alleged violative conduct occurred outside the 180-day

15

look-back period of September 7 to March 11, 2023; however, Fayant was terminated on July 28, 2023, which is within this period. (*See* Doc. 19 at ¶ 12.)

To determine whether an actionable hostile work environment claim exists, a court looks to "the totality of the circumstances[,]" which include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Benjamin*, 112 P.3d at 1049; *see NorVal Elec. Coop. Inc. v. Lawson*, 523 P.3d 5, 16 (Mont. 2022). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Benjamin*, 112 P.3d at 1047 (quoting *Morgan*, 536 U.S. at 117).

According to Fayant, ALK-Abello "created a hostile work environment" during his employment that consisted of "a continuing course of discriminatory conduct" against him because of his race, perceived sexual orientation, gender, and age, and that his termination was "the cumulation of [this] hostile work environment." (Doc. 19 at ¶ 12.) ALK-Abello argues that the continuing violation doctrine does not apply here because the alleged course of discriminatory conduct is "divisible into discrete acts [that are] individually actionable" and statutorily precluded by "the applicable statute of limitations" pursuant to *Morgan*. (Doc. 24 at 23 (citing 536 U.S. at 110–11).) Fayant's argument is more persuasive.

16

Here, Fayant argues that Waddell "labeled" him "as being homosexual in a discriminatory way[,]" (Doc. 19 at ¶ 24), and consistently discriminated against him on this basis, (*id.* ¶¶ 15, 23, 24). For example, Waddell stated on a Market Access Team conference call that it "looks like [Fayant] is in a men's locker room trolling." (*Id.* ¶ 15.) Because this comment was made on a conference call, it humiliated Fayant in front of his team members. (*Id.* ¶ 15.) Waddell made it known to Fayant and others at ALK-Abello that "he intended to find a way to terminate [Fayant] . . . prior to his retirement." (*Id.* ¶ 25.) Additionally, the fact that Fayant is "nearly one-half Chippewa but registered as [one-fourth] with the Turtle Mountain Tribe" was discussed during a Market Access Team meeting, and at a company group dinner, Fayant's coworker "challenged" Fayant's "Native American heritage" by stating that "everyone probably has some Native American in them." (*Id.* ¶ 29.)

This series of separate acts rooted in discrimination against Fayant because of his race, perceived sexual orientation, and gender is sufficiently pled to collectively constitute one unlawful employment practice. This conduct appears severe and humiliating, *see Morgan*, 536 U.S. at 116, and continued until Fayant's termination. Although, as discussed above, in amending his Complaint, Fayant removed nearly all specific event dates, (*compare* Doc. 12 *with* Doc. 19), the Amended Complaint sufficiently alleges that the discriminatory conduct towards

17

Fayant was frequent. Not only does Fayant include the specific examples detailed above, but he also pleads that the "hostile work environment" was "perpetuated . . . on a daily basis." (Doc. 19 at ¶ 24.) Accordingly, Fayant has plausibly alleged a Hostile Work Environment Claim pursuant to the Montana Human Rights Act.

## II.   Wrongful Discharge from Employment Act

The Montana Human Rights Act provides the "exclusive remedy for acts constituting an alleged" discriminatory practice as defined therein. Mont. Code Ann. § 49-2-512(1); *Harrison v. Chance*, 797 P.2d 200, 205 (Mont. 1990). Consistently, an independent claim statutory or commo- law claim may only be brought in conjunction with a Montana Human Rights Act claim if the actions giving rise to former are distinct from those underlying the latter. *See Harrison*, 797 P.2d at 205. Thus, to properly bring a Montana Wrongful Discharge of Employment Act claim, a plaintiff must show that it can be sustained without the allegations of discrimination that underly his Montana Human Rights Act claim. *See Vettel-Becker v. Deaconess Med. Ctr. Billings, Inc.*, 177 P.3d 1034, 1041 (Mont. 2008). Fayant has failed to do so here. In his Amended Complaint, Fayant repeatedly alleges that his discharge was based on discrimination against him because of his immutable characteristics. (*See* Doc. 19 at ¶¶ 12, 14, 22, 30.) The Montana Human Rights Act is the "exclusive remedy" for these alleged discriminatory practices, Mont. Code Ann. § 49-2-512(1), and absent such

allegations, Fayant's wrongful discharge claim cannot be sustained. Accordingly, Fayant's Montana Wrongful Discharge of Employment Act claim is precluded by the Montana Human Rights Act.

### III. Negligent and Intentional Infliction of Emotional Distress

As explained above, the Montana Human Rights Act provides the "exclusive remedy for acts constituting an alleged" discriminatory practice as defined therein. Mont. Code Ann. § 49-2-512(1). Consistently, to properly state a claim for negligent and intentional inflection of emotion distress, it must be independent of the discrimination alleged under the Montana Human Rights Act. *See Bruner v. Yellowstone Cnty.*, 900 P.2d 901, 904–05 (Mont. 1995). Here, the "negligent and intentional actions" of ALK-Abello that Fayant alleges caused him "serious and severe emotional distress[,]" (Doc. 19 at ¶ 48), include "(1) offensive discussions of Plaintiff's ancestry minimizing the importance of Plaintiff's tribal membership; (2) disparate pay; (3) disparate treatment; (4) sexual harassment; and (5) termination," (Doc. 25 at 11). Each of these actions constitute a discriminatory practice as defined by the Montana Human Rights Act. Accordingly, Fayant's emotional distress claim is precluded by the Montana Human Rights Act.

19

## CONCLUSION

Based on the foregoing, ALK-Abello's motion to dismiss is GRANTED in part and DENIED in part as outlined above.

DATED this 15th day of September, 2025.

_____
Donald W. Molloy, District Judge
United States District Court